IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SHARVELT MISTER,** | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | )    Case No.   06–cv–978–SCW |
| | ) |
| **T.J. COLLINS, et al.,** | ) |
| | ) |
|        **Defendants.** | ) |

# MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

## I. Introduction

Before the Court is Defendants' Charles Ampadu, M.D., Barbara Rodriguez, and Jennifer Rude-Little's Combined Motion for Summary Judgment and Supporting Brief (Doc. 97). Specifically, Defendants seek to dismiss all of Plaintiff's claims against the various Defendants because the undisputed facts demonstrate that there was no deliberate indifference to Plaintiff's medical needs. Plaintiff has filed a Response in opposition to Defendants' motion (Doc. 100). Based on the following, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 97).

## II. Factual Background

This matter stems from a course of events that took place between approximately September 2005 and April 2007. At all relevant times Plaintiff was a pretrial detainee at the St. Clair County Jail. Plaintiff was transferred to the Pickneyville Correctional Center and the custody of the Illinois Department of Corrections on or about March 27, 2007.

Plaintiff Mister suffers from severe vision problems requiring corrective lenses (Doc.

97 Ex. A at pp. 116-119). Two or three weeks prior to entering St. Clair County Jail, Plaintiff lost his right contact lens and as a result only had his left lense when he entered the jail (*Id.*).

On September 5, 2005, Plaintiff submitted a Health Services Request Form complaining about eye pain and blurriness (Doc. 100 Ex. A at #76). Nurse Jennifer Rude-Little acknowledged the request and on September 17, 2005, she took his Intake Medical History and Screening (*Id.* at #76, 79-80). At that time, she noted that Plaintiff wore correct lenses but was missing one (*Id.*).

On December 4, 2005, Plaintiff was attacked by three prisoners and as a result suffered three cuts to his head, a swollen right eye, knots on his head, broken teeth, and injuries to his wrist, back, and elbow (Doc. 97 Ex. A at pp. 69-70). Afer the attack, Plaintiff was visited by Nurse Linda Slate who washed out his wounds and applied triple antibiotic ointment (Doc. 97 Ex. B at pp. 88-89). Nurse Slate also provide Plaintiff with ice for his injuries (Doc. 100 Ex. A at #74). While Defendants state that Plaintiff did not know the name of the nurse who attended him on the evening of his attack, they acknowledge that notes in his chart regarding the visit were made by Nurse Slate.

The next day following his attack, Plaintiff met with Nurse Barbara Rodriguez regarding his injuries (Doc. 97 Ex. A at p. 106). Further, on December 9, 2005, he submitted a Health Services Request Form regarding his attack and his complaints about injuries stemming from the attack, including sharp pains in his head, blurry vision, black spots, blood in his phlegm, dizziness, right eye pain, and a busted head (Doc. 100 Ex. A at #73). Dr. Ampadu met with Plaintiff on December 13, 2005 for examination (*Id.* at #72). Dr Ampadu ordered a skull x-ray on December 15, 2005 but the x-ray was unremarkable (Doc. 97 Ex. A at 104-105; Doc. 100 Ex. A at #89). Dr. Ampadu testified in his deposition that he also examined Plaintiff's wrist but that he was able to move it back and forth and it showed no sign of a fracture (Doc. 97 Ex. B at p. 105). Dr. Ampadu believed plaintiff had generalized muscle pain and thus he prescribed ibuprofen, muscle relaxant, and other pain medications, including

Flexeril and Tylenol 3 (*Id.* at pp. 104-105, 198). While Dr. Ampadu testified that it was his practice to take copies of the x-rays to Kenneth Hall Orthopedics for review by Dr. Ramon or Dr. Pulisetty, it is unknown whether such a review took place in this case (*Id.* at p. 142). While Defendants note that Plaintiff had been evaluated for wrist problems in August of 2003, it is unknown whether someone reviewed Dr. Ampadu's findings from the x-ray during this particular incident (Doc. 97 Ex. F).

Following his initial meeting with Dr. Ampadu after his attack, Plaintiff filed a series of Health Services Request Form complaining of identical pain and vision issues dating from December 17, 2005 until February 10, 2007 (*See* Doc. 100 Ex. A). On December 17 and 20, 2005 Plaintiff submitted Health Services Request Form and on December 22, 2005, Dr. Ampadu again saw Plaintiff, explained the results of his skull x-ray and explained that his pain was musculoskeletal (*Id.* at #68-70). On December 25 & 29, 2005 and January 2 & 8, 2006, Plaintiff again submitted Health Services Request Forms and was seen by the medical staff on January 14, 2006 (*Id.* at # 64-67). The staff noted that his left wrist was swollen and he was experiencing limited range of motion (*Id.* at #64). A left wrist x-ray and follow up with Dr. Ampadu was noted in the treatment plan although no x-ray was scheduled on that date (*Id.*).

On January 14, 2006, Plaintiff again submitted a Health Services Request Form complaining of the same issues he had been experiencing since his attack (*Id.* at #63). Dr. Ampadu saw Plaintiff again on January 17, 2006 and prescribed Motrin 800 in response to Plaintiff's complaint of pain (*Id.* at #62). On January 18, 22, & 28, as well as February 5, 14, & 21, 2006 Plaintiff again submitted Health Services Request Forms, noting that his pain medication did not appear to be working (*Id.* at #56-61). In his January 18 Request Form he mentioned an outside eye consultation (*Id.* at #60). Dr. Ampadu again saw Plaintiff on February 24, 2006. He noted that Plaintiff was still complaining of pain from the beating (*Id.* at #55). Dr. Ampadu also noted tenderness in his left wrist and ordered an

x-ray of the wrist (*Id.*). The x-ray indicated a suspected fracture and a follow up navicular series of x-rays were recommended in order to determine if Plaintiff was indeed suffering from a fracture (*Id.* at #87-88). Dr. Ampadu met with Plaintiff again on February 28, 2006 and noted the suspected fracture and ordered the navicular series of x-rays which showed that the fracture was in a satisfactory position (*Id.* at #53, 87).

Throughout March and April, Plaintiff submitted several requests for health services indicating that his hand was still swollen and he was still experiencing the same pain associated with his December attack. Forms for health services were sent on March 9, 16, & 21 and April 7 and 19 (*Id.* at #46, 49-52). On April 21, 2006 Nurse Rude-Little met with Dr. Ampadu and discussed Plaintiff's wrist injury (*Id.* at #48). He, in turn, ordered an additional x-ray which indicated his wrist was healing and was in a satisfactory position (*Id.*).

St. Clair County Circuit Court also issued an Order for a medical evaluation of Plaintiff by Dr. Ampadu on April 25, 2006 (*Id.* at #149). Dr. Ampadu was supposed to evaluate Plaintiff to determine the medical necessity of outside medical treatment. Dr. Ampadu's evaluation noted Plaintiff's complaints of headaches and wrist pain, but he ultimately determined that no outside medical treatment was needed (*Id.* at #48).

After his evaluation, Plaintiff again submitted Health Service Request Forms on May 1, 8, & 21, 2006 (*Id.* at # 43-45). Plaintiff was seen by Dr. Ampadu for complaints involving his vision problems. Dr. Ampadu acknowledged his eye problem., noting it was an existing eye problem (*Id.* at #42). Again, Plaintiff submitted Request Forms on May 29, June 14, July 3, 14, & 31, August 22, September 6, 11, 17, & 26 and October 8, 12, 16, 27 & 29, 2006 for the same pains he continued to complain about since December of 2005 (*Id.* at #16, 20, 23-25, 27-29, 31-34, 37-38, 41). On November 8, 2006, the Circuit Court in St. Clair County issued a second Order requesting medical treatment of

Plaintiff, specifically for head injuries and loss of vision (*Id.* at #147). On November 28, 2006, Dr. Ampadu requested that Plaintiff be seen by an ophthalmologist (*Id.* at #22).

Plaintiff saw Dr. Nurul Huda on December 15, 2006 (*Id.* at #112-114; Doc. 97 Ex. B at p. 185). Dr. Nurul Huda reported that Plaintiff's confrontational visual field, nerve fiber layer, retina, and vessels in the right eye were abnormal (Doc. 100 Ex. A at #112-114). Plaintiff attests that Dr. Huda found he had high myopia, in other words he suffered from nearsightedness requiring a correction of over -6.00 diopters. Defendants claim that Plaintiff came back from Dr. Huda with no new orders, that Dr. Huda did not prescribe anything for Plaintiff, and that he specifically told Dr. Ampadu that Plaintiff needed "nothing" (Doc. 97 Ex. D at p. 53; Ex. B at pp. 189-191). Plaintiff points out that Dr. Ampadu indicated he needed no additional treatment.

On December 22 & 26, 2006 as well as January 5, 27 and February 10, 2007, Plaintiff submitted additional Request Forms again complaining about eye problems and pains associated with his attack in December of 2005 (Doc. 100 Ex. A at #10-14). On February 27, 2007, he again met with Dr. Ampadu who said he would send the report to Dr. Huda for determination on whether Plaintiff needed an eye prescription (*Id.* at #9). However, Plaintiff did not receive any additional treatment for his eyes as he was transferred to Pickneyville Correctional Center (Doc. 97 Ex. A at p. 125).

Upon his arrival at Pickneyville, Plaintiff was evaluated by the medical staff at the correctional center. The staff noted his complaints about his wrist, back, neck, and head pain, as well as his visual problems (Doc. 100 Ex. B). On July 6, 2007, Plaintiff was issued a new right contact lens by Dr. Williams. Dr. Williams also noted that his eye pain was most likely the result of eyestrain as no other cause could be found for the pain (*Id.*). On October 25, 2007, Plaintiff also met with Dr. Pulisetty at Kenneth Hall Regional Hospital regarding his continuing wrist pain (*Id.*). An exam of his wrist revealed several issues with his wrist and noted that the injury was at an advanced stage and required

major surgical reconstruction.

While Plaintiff was still being housed at St. Clair County Jail, he filed the current complaint, alleging that Dr. Ampadu, as well as Nurses Barbara Rodriguez and Jennifer Rude-Little were deliberately indifferent to his serious medical needs (Doc. 1). Defendants filed the pending motion for summary judgment arguing that none of the Defendants were deliberately indifferent.

### III. Summary Judgment Standard

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).** *See also **Ruffin-Thompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005)**. The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004)**. A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1027 (7th Cir. 2004).** Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." ***Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).**

The inquiry performed is the threshold inquiry of determining whether there is the need for a trial, whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001); *Sybron Transition Corporation v. Security Insurance Company of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997).

A showing of a mere factual disagreement between the parties is insufficient, the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw*, 259 F.3d at 837 (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to the non-moving party to "set forth specific facts showing there is a genuine

issue for trial." **FED.R.CIV.P. 56(e)(2)**. The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file.' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex,* **477 U.S. at 324.**

### IV. Analysis

#### A. Deliberate Indifference Standard

The Supreme Court has declared that a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble,* **429 U.S. 97, 104 (1976) (quoting** *Gregg v. Georgia,* **428 U.S. 153, 173 (1976))**. In order to prevail on such a claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley,* **414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).**

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder,* **546 F.3d 516, 522-23 (7th Cir. 2008) (quoting** *Guteirrez v. Peters,* **111 F.3d 1364, 1373 (7th Cir. 1997)). See also** *Foelker v. Outagamie County,* **394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.")**.

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners

constitutes the 'unnecessary and wanton infliction of pain.'" **Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)**. "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." **Duckworth v. Franzen, 780 F.2d 645, 652-53 (7th Cir. 1985)**. Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. **Id. at 653; Shockley v. Jones, 823 F.2d 1068, 1072 (7th Cir. 1987)**. Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. **Greeno, 414 F.3d at 653.** "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence,... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." **Farmer v. Brennan, 511 U.S. 825, 842 (1994) (citations omitted)**. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." **Hayes v. Snyder, 546 F.3d 516, 524 (7th Cir. 2008) (quoting Sherrod v. Lingle, 223 F.3d 605, 611 (7th Cir. 2000))**. "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" **Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir. 2010) (quoting Farmer, 511 U.S. at 843)**.

**B.      Claims against Nurses Barbara Rodriguez and Jennifer Rude-Little**

Plaintiff alleges in his Complaint that both Nurses Rodriguez and Rude-Little were deliberately indifferent to his serious medical needs by failing to timely schedule him for a visit with the doctor. Plaintiff alleges that he spoke with Rodriguez about his injuries but that she refused to let him see Dr. Ampadu, while he alleges that he filed numerous Request Forms to Nurse Rude-Little but that

she did not schedule him an appointment.

However, the undisputed evidence in the record shows that Nurses Rodriguez and Rude-Little were not deliberately indifferent to Plaintiff's medical needs. Plaintiff's chief claim against both Nurses is that they ignored his requests to see Dr. Ampadu after Plaintiff's attack. However, the evidence in the record shows just the opposite. A review of the record before the Court shows that Plaintiff sent in several requests almost every month for approximately a year after his attack. In response to those requests, he saw Dr. Ampadu on numerous occasions. Plaintiff has failed to present any evidence that either Nurse saw his requests and refused to schedule a doctor visit or threw away his requests as alleged in Plaintiff's Complaint. In fact, Plaintiff's own allegations shows that Nurse Rude-Little spoke with Dr. Ampadu about Plaintiff's wrist fracture in response to his Request Forms.

Further, while Plaintiff alleges that the actions of Nurses Rodriguez and Rude-Little resulted in a delay of his treatments, he has not shown that the delay resulted in further injuries. In order for a delay in treatment to result in a constitutional violation, there must be medical evidence that the delay had a detrimental impact on a plaintiff's injuries. **See Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (citing Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996))**. However, Plaintiff has failed to allege that he suffered any detrimental effect as a result in his delay in seeing Dr. Ampadu, nor is there any evidence in the record that suggests he suffered from what appears to be a short delay in the time from the filing of his Request Forms to his actually being seen by Dr. Ampadu. **See Berry v. Peterson, 604 F.3d 435, 442 (7th Cir. 2010) (minor delays in treatment do not result in deliberate indifference); see also Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009) (2 ½ hour delay was "minimal and has no adverse consequences")**. Nurses Rodriguez and Rude-Little's actions due not rise to the level of indifference. **See Grayson v. McCoy, 593 F.3d 610, 623 (7th Cir. 2010) (nurse who put notation in Plaintiff's chart that she should be seen by the doctor, but did**

**not allow plaintiff to see doctor immediately, was not deliberately indifferent)**. Thus, the Court finds that there are no issues of material act as to the actions of Nurses Rodriguez and Rude-Little and that their actions did not rise to the level of deliberate indifference. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment as to the claims against both Nurse Rodriguez and Nurse Rude-Little.

C.  **Claims against Dr. Ampadu**

Plaintiff's Complaint also alleges that Dr. Ampadu was deliberately indifferent to his serious medical needs. Specifically, Plaintiff alleges that Plaintiff suffered from pain associated with his head, wrist, eye, and back pain and that Dr. Ampadu was deliberately indifferent to those injuries as he delayed treatment and failed to adequately treat Plaintiff's injuries.

As to Plaintiff's claims involving his back and head injuries allegedly received during the attack, the Court finds that the undisputed facts demonstrate that Dr. Ampadu was not deliberately indifferent to those injuries. The medical records show that as a result of the attack, Plaintiff suffered superficial lacerations which were treated on the night of the incident with triple antibiotic ointment and ice. In the days following the incident, Plaintiff was seen by Nurse Rodriguez and then Dr. Ampadu. Dr. Ampadu saw Plaintiff on numerous occasions regarding pain from his injuries. Plaintiff's chief complaint was bleeding from his head. Although Dr. Ampadu found bleeding in the head to be unlikely, he ordered a head x-ray of Plaintiff on December 15, 2005. The x-rays revealed no damage to his head. Dr. Ampadu also prescribed various pain medications and muscle relaxants including ibuprofen, Flexeril, and Tylenol 3, for his muscle pains. From the record, the Court finds that Dr. Ampadu's course of treatment was not deliberately indifferent. He throughly examined Plaintiff and x-rayed his head even though he did not believe it to be injured in the way Plaintiff described. Further, he attended to his muscle pains and prescribed appropriate medication. The Court also notes that

Plaintiff has not cited to any facts in the record to raise a genuine issue of material fact as to the injuries to his head and back suffered during the December 4th attack. Therefore, Plaintiff's claims regarding his head and back pain resulting from his attack on December 4, 2005 must fail.

However, Plaintiff has created a genuine issue of material fact as to his eye issues and broken wrist. For over a year, the record shows that Plaintiff complained of wrist pain and eye pain and blurriness. Plaintiff even complained of problems with his eyes before his attack. As to Plaintiff's eye issues, Plaintiff complained for over a year of eye pain and blurriness but Dr. Ampadu did not refer Plaintiff to an eye specialist until November 8, 2006, over a year after Plaintiff first complained of eye problems in September of 2005. Such a delay could lead a jury to believe that the delay was substantial and resulted in unnecessarily prolonged pain. **See Berry, 604 F.3d at 442; McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)**. Dr. Ampadu did not examine Plaintiff for vision problems until May 26, 2006. Although the doctor acknowledged Plaintiff's eye problem, he did not take any further action. Further, Dr. Ampadu did not request an ophthalmologist exam until after a Court Order was issued by St. Clair County Circuit Court. The ophthalmologist examined Plaintiff and found that he had extreme nearsightedness that required correction. Plaintiff alleges that even with these findings, Dr. Ampadu still determined that no treatment was necessary. Dr. Huda's report, however, noted that Plaintiff suffered from extreme nearsightedness requiring corrective lenses. On the other hand, Dr. Ampadu argues that Plaintiff returned from the eye specialist with no new orders and that upon calling the ophthalmologist, the specialist insisted that Plaintiff needing "nothing." This dispute among the parties creates an issue of material fact. Plaintiff continued to complain of increasing eye pain resulting in loss of sleep, until his transfer to the Illinois Department of Corrections. However, upon entering the Illinois Department of Corrections, Plaintiff was evaluated by medical staff who issued him a new right contact and determined his pain was a result of eye strain. Therefore, summary judgment is not

appropriate in this case where there is a genuine issue of material fact as to whether Dr. Ampadu was deliberately indifferent to Plaintiff's serious eye pain, which ultimately required a new contact lense, by failing to refer Plaintiff to an ophthomologist for over a year after Plaintiff's persistent and continuous complaints of increasing eye pain and blurriness. ***Id.* (claims of deliberate indifference against a doctor for failing to refer plaintiff to a dentist after persistent complaints of increasing pain, which ultimately required a root canal, survived motion for summary judgment).** The Court also notes there is a dispute of material fact as to whether Dr. Ampadu failed to pursue further treatment and testing after learning of Dr. Huda's findings regarding Plaintiff's poor eye sight. Accordingly, summary judgment is inappropriate as to this claim.

As to his wrist injury, Plaintiff has also established triable issues of material fact. Here again, Plaintiff argues that he received a substantial delay in treatment which later was determined to require extensive repair. Plaintiff continuously complained of wrist pain and a medical staff member evaluated Plaintiff's wrist, noting swelling and restricted range of motion and flexibility, on January 14, 2006, yet Plaintiff was not seen by Dr. Ampadu until February 24, 2006. Defendant Ampadu argues that the x-ray showed a suspected fracture and a navicular series was ordered which revealed that the wrist was healing satisfactorily, while Plaintiff points out that the facts show it was not healing normally as a later review by the Illinois Department of Corrections revealed the injury was in an advanced stage requiring major reconstructive surgery. Plaintiff has, therefore, alleged facts from which a jury could decide that Dr. Ampadu was deliberately indifferent in delaying Plaintiff's treatment of his wrist.

There also exists an issue of material fact as to whether Dr. Ampadu failed to follow his own protocol. Dr. Ampadu points out in his own deposition that his practice with injuries such as Plaintiff's is to send copies of the x-rays to Kenneth Hall Orthopedics to Dr. Ramon or Dr. Pulisetty to determine if surgical intervention is needed and that if surgery is needed, he would take steps to

ensure that the patient receives surgery. However, the record before the Court does not reveal whether Dr. Ampadu followed this procedure in this case. The Court notes that Dr. Pulisetty is also the doctor who reviewed Plaintiff's injuries after his transfer to the Illinois Department of Corrections. Dr. Pulisetty ultimately determined that major surgery was required to repair the wrist. Thus, there are several issues of material fact which are best left to the jury for determination. Therefore, the Court **DENIES** summary judgment as to Plaintiff's claims of Dr. Ampadu's deliberate indifference to Plaintiff's eye issues, not resulting from the attack, and his broken wrist.

## V. Conclusion

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment. The Court **GRANTS** Defendants' summary judgment as to the claims against Nurses Rodriquez and Rude-Little. The Court also **GRANTS** Defendants' summary judgement as to Plaintiff's claims of deliberate indifference against Dr. Ampadu regarding Plaintiff's head and back pain. However, the Court **DENIES** Defendant Dr. Ampadu's motion for summary judgment as to the claims of deliberate indifference regarding Plaintiff's eye issues and broken wrist. Thus, the only claims which remain for trial are Plaintiff's claims against Dr. Ampadu for deliberate indifference of Plaintiff's eye issues and broken wrist.

**IT IS SO ORDERED.**

**DATED: February 3, 2011**

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge